UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

HENGJUN CHAO, M.D.,

                         Plaintiff,

                -against-

THE MOUNT SINAI HOSPITAL, THE MOUNT SINAI
MEDICAL CENTER, THE MOUNT SINAI SCHOOL
OF MEDICINE, DENNIS S. CHARNEY, M.D.,
REGINALD MILLER, DVM, ELLEN F. COHN, Ph.D
a/k/a ELLEN BLOCK COHN, MAREK MLODZIK,
Ph.D., HANS SNOECK, Ph.D., TERRY KRULWICH,
Ph.D., HELEN VLASSARA, M.D., JAMES GODBOLD,
Ph.D, LILIANA OSSOWSKI, MSc, Ph.D.,

                       Defendants.

-------------------------------------------------------------------- x

No. 10 CV 2869 (HB)

 

# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO DISMISS

 

EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4500
Attorneys for the Defendants

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 4

    A.    Documents Submitted to the Court.................................................................. 4

    B.    Facts Accepted as True in Determining the Motion ................................................. 6

            1.    All Individual Parties Were Employees of MSSM ..................................... 6

            2.    MSSM Appointed an Investigation Committee as Required by Federal Law to Investigate Allegations against Chao ................................. 6

            3.    MSSM's Response to the 2007 Cohn Letter Was Mandated by a Comprehensive Federal Regulatory Scheme ............................................ 7

            4.    Defendant Cohn Sent the 2007 Cohn Letter to RIO Miller as Required by the ORI Regulations and MSSM Ethical Research Policy .......................................................................................... 8

            5.    The Investigation Committee and Dean Charney Were Obligated by Law to Interview Witnesses, Prepare the Final Investigation Report and Submit It to ORI .............................................................. 9

            6.    ORI Elected Not to Pursue Findings of Research Misconduct and Recognized the Authority of MSSM to Impose Its Own Standards .......... 11

            7.    Dean Charney Sent Chao the Notice of Termination for Reasons Stated in the Faculty Handbook ............................................................. 11

            8.    The Faculty Disciplinary Tribunal Affirmed Dean Charney's Decision to Terminate Chao ............................................................... 12

            9.    The Trustee Appeals Board Affirmed the Decision of the Faculty Disciplinary Tribunal ....................................................................... 13

ARGUMENT ................................................................................................... 13

    A.    The Legal Standard for This Motion ................................................................ 13

    B.    Chao Fails To State A Claim For Defamation (Fourth Cause of Action) ............ 13

1.   Chao's Defamation Claims against Defendants Cohn   and Ossowski Are Barred by the Statute of Limitations ...................................14

2.   Chao's Defamation Claims against Cohn,  Ossowski, the Members of the Investigation   Committee and MSSM Are Barred by the Absolute   Privilege for  Statements  Made  in  Quasi-Judicial Proceedings ............................................................................................15

3.   Chao's Defamation Claims against All Defendants  Are Barred by the Qualified Common Interest Privilege .....................................22

4.   Chao's Defamation Claim against "Mount  Sinai and/or MSSM" Is Impermissibly Vague And Based on a Statement That Is Not False .........27

C.   Chao Fails to State Any Claim for Injurious Falsehood/Trade Libel (Fifth Cause of Action) ......................................................................................28

D.   Chao Fails to State Claims for Tortious Interference With Contract (First Cause of Action) ...............................................30

1.   Chao's Tortious Interference  Claim Must  Fail on the  Same Grounds as His Defamation Claim ............................................................30

2.   No Wrongful Means Was Present................................................................31

3.   The Medical School Employees Cannot Interfere with Their Employer's Own Contract ........................................................................31

E.   Chao Fails to State a Claim for Tortious Interference  with Prospective Business Advantage (Second Cause of Action)....................................................32

F.   Chao Fails to State a Claim for *Prima Facie* Tort (Third Cause of Action) ........34

G.   Chao's Claims against the Mount Sinai Entities Should Be Dismissed ................34

CONCLUSION..................................................................................................................35

## TABLE OF AUTHORITIES

### CASES

Achtman v. Kirby, McInenery & Squire, LLP, 464 F.3d 328 (2d Cir. 2006) ...............................13

Albert v. Loksen, 239 F.3d 256 (2d Cir. 2001)............................................................................30

Anderson v. Bronx Lebanon Hosp. Ctr., No. 03 Civ 6450, 2005 WL 121746 (S.D.N.Y.
Jan. 21, 2005).....................................................................................................................15, 26

Aquilone v. Republic Nat'l Bank of New York, No. 98 Civ. 5451, 1998 WL 872425
(S.D.N.Y. Dec. 15 1998).........................................................................................................22

Barr v. Matteo, 360 U.S. 564 (1959) ...........................................................................................16

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........................................................................13

Buckley v. Litman, 57 N.Y.2d 516 (1982) ....................................................................................21

Butler v. Delaware Otsego Corp., 203 A.D.2d 783 (3d Dep't 1994) ...........................................34

Culver v. Merrill Lynch & Co., No. 94 Civ. 8124, 1995 WL 4222203
(S.D.N.Y. July 17, 1995) .........................................................................................................22

Dillon v. City of New York, 261 A.D.2d 34 (1st Dep't 1999) .................................................22, 26

Donofrio-Ferrezza v. Nier, No. 04 Civ. 11621, 2005 WL 2312477
(S.D.N.Y. Sept. 21, 2005).............................................................................................24, 31, 32

Drug Res. Corp. v. Curtis Publ'g Co., 7 N.Y.2d 435 (1960).......................................................30

Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052 (2d Cir. 1992)....................34

Frith v. Hill, No. 07 Civ. 5899, 2009 WL 3073716 (S.D.N.Y. Sept. 23, 2009).......................5, 35

Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp. 2d 405 (S.D.N.Y. 2009)...................14, 26

Gargiulo v. Forster & Garbus Esqs., 651 F. Supp. 2d 188 (S.D.N.Y. 2009)............................4, 14

Hanly v. Powell Goldstein, L.L.P., 250 Fed. App'x 435, 439 (2d Cir. 2008) ...............................14

Harris v. Provident Life and Accident Ins. Co., 310 F.3d 73 (2d Cir. 2002)................................34

Hassan v. Spicer, No. 05-CV-1526, 2006 WL 228958 (E.D.N.Y. Jan. 31, 2006), aff'd,
216 Fed. App'x 123 (2d Cir. 2007)...........................................................................................23

Hinds v. Magna Fabrics, Inc., No. 96 Civ. 1383, 1997 WL 309379
(S.D.N.Y. June 9, 1997)....................................................................................................16

Hoffman v. Landers, 146 A.D.2d 744 (2d Dep't 1989)................................................15

Jain v. Securities Indus. and Fin. Markets Assoc., No. 08 Civ. 6463, 2009 WL 3166684
(S.D.N.Y. Sept. 28, 2009)...............................................................................................29

Karaduman v. Newsday, Inc., 51 N.Y.2d 531 (1980) ..................................................15

Kasada Inc. v. Access Capital, Inc., No. 01 Civ. 8893, 2004 WL 2903776 (S.D.N.Y. Dec.
14, 2004) ..........................................................................................................................30

Kelly v. Schmidberger, 806 F.2d 44 (2d Cir. 1986) .....................................................27

Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92 (2d Cir. 2000)............................24

Krepps v. Reiner, 588 F. Supp. 2d 471 (S.D.N.Y. 2008) .............................................32

Lehtinen v. Bill Comm'ns, Inc., No. 88 Civ. 8257, 1989 WL 38130 (S.D.N.Y. Apr. 12,
1989) ................................................................................................................................31

Leung v. New York Univ., No. 08 Civ. 5150, 2010 WL 1372541 (S.D.N.Y. Mar. 29,
2010) ....................................................................................................................23, 28, 35

Markovic v. New York City Sch. Constr. Auth., No. 99 Civ. 10339, 2002 WL 22043
(S.D.N.Y. Jan. 8, 2002)...................................................................................................31

McKenzie v. Dow Jones & Co., 355 Fed. App. 533, 536 (2d Cir. 2009).....................34

Moreno v. Marbil Productions, Inc., 296 F.2d 543 (2d Cir. 1961)..............................32

Morrison v. Nat'l Broad. Co., 19 N.Y.2d 453, 459 (2d Cir. 1967) .............................34

New York 10-13 Ass'n v. City of New York, No. 98 Civ. 1425, 1999 WL 177442
(S.D.N.Y. Mar. 30, 1999) .................................................................................................5

O'Brien v. Alexander, 898 F. Supp. 162 (S.D.N.Y. 1995)...........................................29

Pasquilini v. Mortgage IT, Inc., , 498 F. Supp. 2d 659 (S.D.N.Y. 2007) ...................33

Pedraglio v. Citibank, Inc., No. 97 Civ. 2179, 1997 WL 778750 (S.D.N.Y. Dec. 18,
1997) ................................................................................................................................31

Rall v. Hellman, 284 A.D.2d 113 (1st Dep't 2001)......................................................30

Red Cap Valet, Ltd. v. Hotel Nikko (USA), Inc., 273 A.D.2d 289 (2d Dep't 2000) ...................27

Riddell Sports Inc. v. Brooks, 872 F. Supp. 73. (S.D.N.Y. 1995)................................................29

Riel v. Morgan Stanley, No. 06 2007 WL 541955 (S.D.N.Y. Feb. 16, 2007), aff'd,
299 Fed. App'x 91 (2d Cir. 2008)............................................................................................4, 13

Rosenberg v. Metlife, Inc., 8 N.Y.3d 359 (2007) ...........................................................16, 18, 19

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007)...........................................................................4, 13

Santaganda v. Lifedata Med. Servs., Inc., No. 92 Civ. 6110, 1993 WL 378309 (S.D.N.Y.
Sept. 22, 1993)...............................................................................................................................29

Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000).....................................28

Serratore v. Am. Port Servs., Inc., 293 A.D.2d 465 (2d Dep't 2002)...........................................26

Shapiro v. Central Gen'l Hosp., Inc., 251 A.D.2d 317 (2d Dep't 1998) .......................................20

Shapiro v. Health Ins. Plan of Greater N.Y., 7 N.Y.2d 56 (1959)................................................21

Slue v. New York Univ. Med. Ctr., 409 F. Supp. 2d 349 (S.D.N.Y. 2006) ......................22, 23, 32

Spang v. Katonah v. Lewisboro Union Free Sch. Dist., 626 F. Supp. 2d 389 (S.D.N.Y.
2009) .................................................................................................................................................32

Thomas v. Bergdorf Goodman, Inc., No. 03-3066(SAS), at *12 (Dec. 22, 2004) ........................34

Viruet v. Citizen Advice Bureau, No. 01 Civ 4594, 2002 WL 1880731
(S.D.N.Y. Aug. 15, 2002) ..............................................................................................................16

Wiener v. Weintraub, 22 N.Y.2d 330 (1968) .................................................................19, 20, 21

## STATUTES

42 U.S.C. § 289b(c) ............................................................................................................7

N.Y. Educ. Law § 6527 ................................................................................................21, 23

N.Y. Judiciary Law § 90(10) ............................................................................................20

## REGULATIONS

42 C.F.R. § 93 ....................................................................................................................5

42 C.F.R. § 93.100(b) ......................................................................................................7, 8

42 C.F.R. § 93.101(d)(1) ....................................................................................................8

42 C.F.R. § 93.101(e) .....................................................................................................7, 18

42 C.F.R. § 93.108(a) ........................................................................................................21

42 C.F.R. § 93.214 ...........................................................................................................7, 8

42 C.F.R. § 93.215(3) ........................................................................................................15

42 C.F.R. § 93.289b)(b)(1) ..................................................................................................8

42 C.F.R. § 93.300 .....................................................................................................8, 9, 21

42 C.F.R. § 93.304 ..............................................................................................................8

42 C.F.R. § 93.307(a)(3) ......................................................................................................9

42 C.F.R. § 93.307(d)(2) ......................................................................................................9

42 C.F.R. ¶ 93.310(g) ...................................................................................................10, 25

42 C.F.R. §§ 93.311-93.315 ..............................................................................................10

42 C.F.R. § 93.317 ..............................................................................................................7

42 C.F.R. § 93.319(a) ........................................................................................................11

42 C.F.R. § 93.400 ............................................................................................................19

42 C.F.R. § 93.402(a) ..........................................................................................................8

42 C.F.R. § 93.403(d) ........................................................................................................18

42 C.F.R. § 93.407 ............................................................................................................18

42 C.F.R. § 93.500 ............................................................................................................18

```
 ####  #######
    #   #  #  #
    #      #     ##  ###    ####     ####     ### #    ####
    #      #     ##         #    #   #    #    #   ##  #     #
 #  #      #     #        ######   ######    #       ######
 #  #      #     #        #         #         #        #
 #  #      #     #        #         #         #    #   #
  ###    ###   #####    #####    #####    ####    #####
```

Job : 116
Date: 06/30/2010
Time: 11:41:16 am

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- x

HENGJUN CHAO, M.D.,

                        Plaintiff,

                 -against-

THE MOUNT SINAI HOSPITAL, THE MOUNT SINAI
MEDICAL CENTER, THE MOUNT SINAI SCHOOL
OF MEDICINE, DENNIS S. CHARNEY, M.D.,
REGINALD MILLER, DVM, ELLEN F. COHN, Ph.D
a/k/a ELLEN BLOCK COHN, MAREK MLODZIK,
Ph.D., HANS SNOECK, Ph.D., TERRY KRULWICH,
Ph.D., HELEN VLASSARA, M.D., JAMES GODBOLD,
Ph.D, LILIANA OSSOWSKI, MSc, Ph.D.,

                        Defendants.

No. 10 CV 2869 (HB)

----------------------------------------------------------------------- x

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

        Defendants, by their attorneys, Epstein Becker & Green, P.C., submit this

memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, for an order dismissing (a) plaintiff's first through fifth causes of action for

defamation and other torts sounding in defamation, and (b) dismissing the amended complaint

(the "Complaint") in its entirety as against The Mount Sinai Hospital and The Mount Sinai

Medical Center (collectively, "the Mount Sinai Entities").

### PRELIMINARY STATEMENT

        Defendant Mount Sinai School of Medicine ("MSSM") is a preeminent medical

school and biomedical research facility whose faculty includes physicians and scientists

conducting cutting-edge biomedical research, much of it funded by grants from the Public Health

Service ("PHS"), particularly the National Institutes of Health (the "NIH"). The plaintiff, Dr.

Hengjun Chao, was terminated from his position as an Assistant Professor of Medicine on the faculty of the MSSM for engaging in unprofessional conduct, including misconduct in research.

As required by the detailed federal regulations governing institutions receiving PHS funds for the conduct of research, MSSM mandates that its employees report allegations of possible research misconduct to MSSM's Research Integrity Officer ("RIO") defendant Reginald Miller. MSSM has an elaborate process, prescribed in detail by federal regulations, for the investigation of allegations of research misconduct and is required to report its investigation to the federal Office of Research Integrity ("ORI"). Thus, in compliance with MSSM's legal obligations, a post doctoral fellow, defendant Ellen F. Cohn, reported her concerns regarding Chao's research to RIO Miller. RIO Miller undertook a preliminary review of those concerns as required by federal law and referred Cohn's concerns to a MSSM Inquiry Panel (the "Panel"). Based on the recommendation of the Panel and RIO Miller, MSSM convened an investigation committee (the "Investigation Committee") comprised of senior MSSM faculty members, all of whom are defendants in this action by virtue of their membership on that Investigation Committee. They are defendants Marek Mlodzik, Hans Snoeck, Terry Krulwich, Helen Vlassara, and James Godbold. Other MSSM faculty members, including defendants Cohn and Ossowski, testified before the Investigation Committee.

After an extensive investigation, the Investigation Committee issued a final report (the "Final Report") that concluded, among other things, that Chao engaged in research misconduct and other serious unprofessional conduct. As required by law, the Final Report was provided to defendant Dennis S. Charney, Dean of MSSM and to ORI. After further review of the issues identified in the Final Report, Dean Charney recommended Chao's termination from the faculty of the MSSM.

The MSSM Faculty Handbook provides for a procedure that enables members of the faculty, such as Chao, who have received notices of their impending termination, to have those termination decisions subjected to a two-step due process procedure. The first step is a peer review hearing before the MSSM Faculty Disciplinary Tribunal (the "Disciplinary Tribunal"), a panel comprised of members of the faculty, and the second is an appeal before an Appeals Board of the Board of Trustees. Upon receiving notice from Dean Charney that he would be terminated, Chao appealed and a full hearing was held before the Disciplinary Tribunal. Defendants Miller, Mlodzik, Charney and Snoeck testified before the Disciplinary Tribunal. The Disciplinary Tribunal, comprised of five senior MSSM faculty members, unanimously sustained the termination decision of Dean Charney, finding, among other things, that Chao lacked the "understanding of . . . fundamental matters of scientific practice and ethical behavior."

Chao appealed the decision of the Disciplinary Tribunal to an Appeals Board of the Board of Trustees of MSSM (the "Trustees' Appeals Board"). The Appeals Board was comprised of three preeminent MSSM trustees, all members of the Board's Legal Committee – George J. Grumbach, Senior Counsel at Cleary Gottlieb Steen & Hamilton LLP; Blaine V. Fogg, of Counsel at Skadden, Arps, Slate, Meagher & Flom LLP; and Bernard W. Nussbaum, a partner at Wachtell, Lipton, Rosen & Katz LLP. The Trustees' Appeals Board held a hearing at which Chao and his counsel were given the opportunity to present their reasons for setting aside Chao's termination from the faculty and at which Dean Charney spoke in support of the termination. After hearing argument and studying the record, the Trustees' Appeals Board issued a decision in which it unanimously concluded that the evidence amply supported the Disciplinary Tribunal's conclusions and Dean Charney's decision to terminate plaintiff, and Chao's termination thus became final.

By this lawsuit, Chao seeks to avoid the consequences of his own misconduct through a series of specious claims. Chao's claims of defamation are propounded against faculty members of MSSM because they were fulfilling their responsibility to MSSM, the federal government and the scientific community. All of the allegedly defamatory statements made by the defendants were made in the context of the reporting or investigating allegations of Chao's misconduct in research, or in the course of the due process appeal requested by Chao himself and are thus privileged. The statements made in the course of the mandatory reporting to ORI and in the conduct of the federally mandated investigation of the allegations of misconduct in research are absolutely privileged. In addition, some of the statements were made more than a year before the filing of the compliant and are time-barred by the statute of limitations. Lastly, Chao's claims against the Mount Sinai Entities for breach of contract and employment discrimination should be dismissed since neither entity employed Chao or any of the individual defendants.

## STATEMENT OF FACTS

### A.      Documents Submitted to the Court

In deciding a motion to dismiss, the court "must accept as true all of the factual allegations set out in plaintiff's complaint. . . ." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (citation omitted). In addition to the allegations pleaded in the complaint, the court may also consider documents incorporated by reference in the complaint, or relied upon by the plaintiff in framing the complaint. See Gargiulo v. Forster & Garbus Esqs., 651 F. Supp. 2d 188, 190 (S.D.N.Y. 2009) (in deciding a motion to dismiss a defamation claim, a court "may consider documents attached to the complaint or incorporated by reference, such as the affidavits containing the allegedly actionable statements") (citation omitted); Riel v. Morgan Stanley, No. 06 CV 524, 2007 WL 541955, at * 4 (S.D.N.Y. Feb. 16, 2007), aff'd, 299 Fed. App'x 91 (2d Cir. 2008) (considering documents beyond complaint in defamation action, including document

containing the allegedly defamatory statement).  In addition to documents referenced or relied upon in the complaint, the court may take judicial notice of statutes, legislative history, and federal regulations.  See, e.g., New York 10-13 Ass'n v. City of New York, No. 98 Civ. 1425, 1999 WL 177442, at *12 (S.D.N.Y. Mar. 30, 1999) (taking judicial notice of statues and their legislative history); Frith v. Hill, No. 07 Civ. 5899, 2009 WL 3073716, at *16 n.10 (S.D.N.Y. Sept. 23, 2009) ("[J]udicial notice may be taken of 'the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority.'") (citation omitted).

   In considering this motion, the defendants ask the Court to consider the following documents, which are submitted as Exhibits A through I to the Declaration of Beth Essig in support of the defendants' motion to dismiss:  (A) 42 C.F.R. Part 93 (the "ORI Regulations") (referenced and relied upon by Chao in ¶¶ 40, 43, and 54 of the Complaint); (B) Chapter VI of the MSSM Faculty Handbook (referenced and relied upon by Chao in ¶ 40 of the Complaint); (C) Chapter IV of the MSSM Faculty Handbook (referenced and relied upon by Chao in ¶ 65 of the Complaint); (D) the October 3, 2007 letter from defendant Cohn to RIO Miller (the "2007 Cohn Letter") (referenced and relied upon by Chao in ¶ 30 of the Complaint); (E) the Final Report (referenced and relied upon by Chao in ¶¶ 51, 55-62 of the Complaint); (F) the May 7, 2009 letter from Dean Charney to Chao terminating Chao's employment (the "Termination Letter") (referenced and relied upon by Chao in ¶¶ 63-64 of the Complaint); (G) the September 8, 2009 letter from ORI to RIO Miller (the "ORI Letter") (referenced and relied upon by Chao in ¶¶ 53-54 of the Complaint); (H) the decision of the Disciplinary Tribunal  (the "Disciplinary Tribunal Decision") (referenced and relied on by Chao in ¶ 70 of the Complaint); and (I) the Decision of the Trustees' Appeals Board (referenced and relied on by Chao  in ¶ 71 of the Complaint).

**B.**     <u>Facts Accepted as True in Determining the Motion</u>

Based on the allegations in the Complaint, and the documents referenced and relied upon therein, the following facts are deemed true for purposes of this motion.

**1.**     <u>All Individual Parties Were Employees of MSSM</u>

Chao and each of the individual defendants were employed by MSSM at all relevant times. (Compl. ¶¶ 9, 11, 12-13, 17-20.) Defendant Cohn was a post-doctoral fellow in Chao's lab. (Compl. ¶ 24.) RIO Miller was a member of the MSSM faculty. (Compl. ¶¶ 11-12; 2007 Cohn Letter.) Defendant Ossowski was a Professor Emeritus of Medicine and Oncological Sciences at MSSM. (Compl. ¶ 13.) Dean Charney was the Dean of MSSM. (Compl. ¶ 9.) Defendants Marek Mlodzik, Hans Snoeck, Terry Krulwich, Helen Vlassara and James Godbold were Investigation Committee members and professors at MSSM. (Compl. ¶ 12.)

**2.**     <u>MSSM Appointed an Investigation Committee as Required
by Federal Law to Investigate Allegations  against Chao</u>

On or about October 3, 2007, defendant Cohn submitted the 2007 Cohn Letter to RIO Miller, asking that Chao's conduct in connection with the submission of a manuscript to a scientific journal for publication and the conduct of Chao's laboratory be investigated. (Compl. ¶¶ 30-31, 35, 37, 40; 2007 Cohn Letter)  As required by federal regulation, MSSM first convened an inquiry panel (the "Panel") of the Research Integrity Committee ("RIC"), and then convened the Investigation Committee to investigate the allegations made in the 2007 Cohn Letter. (Compl. ¶¶ 31, 39.) The Investigation Committee's explicit mandate was to, among other things, investigate allegations of research misconduct made against Chao. (Compl. ¶ 40.) The Investigation Committee's work was conducted pursuant to Chapter VI of the MSSM

Faculty Handbook and 42 C.F.R. Part 93 of the Code of Federal Regulations (the "ORI Regulations"). (Compl. ¶¶ 40, 43.)

### 3. MSSM's Response to the 2007 Cohn Letter Was Mandated by a Comprehensive Federal Regulatory Scheme

The ORI Regulations were promulgated by the United States Department of Health and Human Services ("HHS") and enforced by ORI. ORI is an independent entity within HHS established by Congress in 1993. See National Institutes of Health Revitalization Act of 1993 ("NIH Revitalization Act"), Pub. L. No. 103-43, § 161, 107 Stat. 122, 140-42 (codified as amended at 42 U.S.C. § 289b). HHS has delegated to ORI responsibility for addressing research integrity and misconduct issues related to PHS funded research. See 42 C.F.R. § 93.317. ORI oversees inquiries and investigations of research misconduct in research institutions, such as MSSM, that receive PHS funds. See 42 U.S.C. § 289b(c).

The purpose of the ORI Regulations is to "[p]rotect the health and safety of the public, promote the integrity of PHS supported research and the research process, and conserve public funds." 42 C.F.R. § 93.101(e). The ORI Regulations provide that institutions that receive PHS funds for biomedical research "share responsibility" with HHS for the integrity of the research. 42 C.F.R. § 93.100(b). HHS has "ultimate oversight authority for PHS supported research, and for taking other actions as appropriate or necessary" when research fraud is uncovered. Institutions and their employees, on the other hand, have self-policing "primary responsibility" for responding to allegations of research misconduct and reporting such allegations to ORI. 42 C.F.R. § 93.100(b). In addition, institutions and their employees have an affirmative duty to "[ensure] the integrity of all PHS supported work." 42 C.F.R. §§ 93.100, 93.214.

After ORI receives an allegation of research misconduct, it may conduct its own inquiry or "refer the matter to the relevant institutions for an assessment, inquiry, or other appropriate actions." 42 C.F.R. § 93.402(a). As required by the NIH Revitalization Act, MSSM has established an administrative process to review and investigate reports of research misconduct in connection with biomedical and behavioral research. See 42 U.S.C. § 289b(b)(1); 42 C.F.R. §§ 93.101(d)(1); 93.300(a); 93.304. This process is set forth in Chapter VI of the Faculty Handbook. See Chapter VI of the Faculty Handbook: Research Environment - Policies and Procedures on Ethical Practices in Research ("MSSM Ethical Research Policy") § A ("The policy is . . . intended to satisfy the requirements of the Office of Research Integrity for allegations of research misconduct as that term is specifically defined.").

### 4. Defendant Cohn Sent the 2007 Cohn Letter to RIO Miller as Required by the ORI Regulations and MSSM Ethical Research Policy

The ORI Regulations provide that an institution and its employees, including researchers and postdoctorate fellows, have an affirmative duty to "[ensure] the integrity of all PHS supported work." 42 C.F.R. §§ 93.100, 93.214. Moreover, institutions have a specific duty to "[f]oster a research environment that promotes the responsible conduct of research, research training, and activities related to that research or research training, discourages research misconduct, and deals promptly with allegations or evidence of possible research misconduct." Id. § 93.300(c). The MSSM Ethical Research Policy implements these regulatory duties by, among other things, requiring MSSM faculty and employees to report instances of unethical practices in research to the RIO (emphasis added):

> As part of the commitment to intellectual honesty and integrity, each faculty member and employee involved with research is responsible for promoting an environment that emphasizes open publication and discussion, high quality research, appropriate

supervision, accurate and complete research records, and appropriate attribution of credit and responsibility. . . .

Further, if faculty and/or staff observe unethical practices in research, it is their obligation to report this information to the Research Integrity Officer ("RIO") for review and investigation as provided for below.

As required by the MSSM policy, Cohn submitted the 2007 Cohn Letter to the RIO. (Compl. ¶¶ 30, 35, 37.) Upon receipt of the 2007 Cohn Letter, MSSM was obligated under the ORI Regulations to "respond to each allegation of research misconduct for which the institution is responsible under this part. . . ." 42 C.F.R. § 93.300(b).

### 5.  The Investigation Committee and Dean Charney Were Obligated by Law to Interview Witnesses, Prepare the Final Investigation Report and Submit It to ORI

Under the ORI Regulations, if an institution receives an allegation of research fraud that is "sufficiently credible and specific so that potential evidence of research conduct may be identified," then it must "conduct an initial review of the evidence to determine whether to conduct an investigation." 42 C.F.R. § 93.307(a)(3), (c). Consistent with the ORI Regulations, the MSSM and the Faculty Handbook provides that the RIO will determine if the allegations are credible and specific enough such that evidence may be identified, and, if so, will refer the matter to the RIC who will then constitute an inquiry panel. (MSSM Ethical Research Practices § F.IV.1.1.3.) The 2007 Cohn Letter was reviewed by RIO Miller, who then, as required, submitted the 2007 Cohn Letter to the RIC, which then convened the Panel. (Compl. ¶ 31.)

As required by the ORI Regulations, the Panel prepared a written report of its findings and forwarded it to the ORI. 42 C.F.R. § 93.307(d)(2); Final Report at 2. Consistent with MSSM policy and ORI regulations, Dean Charney determined that the allegations might "have substance," and accordingly, the Investigation Committee was appointed for the purpose

of conducting a full investigation. (Compl. ¶ 39.) Chao has named all of the members of the Investigation Committee as defendants in this action. (Compl. ¶ 12.)

Under the ORI Regulations, the Investigation Committee is required to interview each complainant, respondent, and any other available person who has been "reasonably identified as having information regarding any relevant aspects of the investigation." 42 C.F.R. ¶ 93.310(g). See also Ethical Research Practices § F.VI. ("The Ad Hoc Committee must . . . interview each person who has been reasonably identified as having relevant information, including the researcher under investigation".)

The Investigation Committee interviewed defendant Cohn on April 28, August 11 and September 23, 2008. (Compl. ¶ 41; Final Report at 4.) The Investigation Committee also interviewed defendant Ossowski on May 12, 2008, who testified, among other matters, that she had a meeting with Chao, during which Chao advised her that he had asked Cohn to "switch mice from one group to another." (Compl. ¶ 62; Report at 4, 21.)

As required by the ORI Regulations, the Investigation Committee prepared a draft written report of detailed findings made during its investigation, provided the draft report to Chao for his comments, and after reviewing and addressing Chao's comments prepared the Final Report. 42 C.F.R. §§ 93.311-93.315; Addendum to Final Report at 1.

On or about April 7 or April 8, 2009, the Investigation Committee issued its Final Report, concluding that Chao had engaged in misconduct in research and other grave inappropriate conduct. (Compl. ¶¶ 51, 55-57.) As required by the ORI Regulations and the MSSM Ethical Research Policy, the Final Report was provided to Dean Charney and then to the ORI. (Compl. ¶ 52.; 42 C.F.R. § 93.315; MSSM Ethical Research Policy § C.)

6.    **ORI Elected Not to Pursue Findings of Research Misconduct and
       Recognized the Authority of MSSM to Impose Its Own Standards**

On September 8, 2009, ORI's Division of Investigative Oversight informed RIO

Miller that it had reviewed the Final Report, and was declining to recommend that ORI pursue

findings of research misconduct, and left it to MSSM's discretion to take appropriate action.

(Compl. ¶ 53; ORI Letter).  The ORI's letter provided, in relevant part, as follows:

> Based on the evidence provided by MSSM and during it's [sic]
> oversight review, DIO is declining to recommend that ORI pursue
> findings of research misconduct in this case.
>
> In deciding to administratively closed [sic] this case, DIO
> recognizes the authority of MSSM to independently set its own
> standards and make determinations of when staff has failed to meet
> the norms of behavior expected at the institution.    DIO's
> administrative determination in this case does not diminish the
> authority of MSSM to draw its own conclusions about the
> scientific or professional misconduct by Chao. The *Public Health
> Service Policies on Research Misconduct* (42 C.F.R. § 93.319(a))
> states that:
>
> > Institutions may have internal standards of conduct
> > different from the HHS standards for research misconduct
> > under this part.  Therefore, an institution may find conduct
> > to be actionable under its standards even if this action does
> > not meet this part's definition of research misconduct.

(ORI Letter).

7.    **Dean Charney Sent Chao the Notice of Termination
       for Reasons Stated in the Faculty Handbook**

Pursuant to the Faculty Handbook, MSSM may take disciplinary action against a

faculty member, for, among other things: (a) neglect of professional duties; (b) violation of

professional or ethical obligations; (c) fraud or misconduct in research or professional activities;

or (d) other grave misconduct.  (MSSM Faculty Handbook Chapter IV.)  On or about May 7,

2009, after receipt of the Investigation Committee's Final Report, Dean Charney advised Chao

of his intent to terminate him on all of these grounds. (Compl. ¶ 63; Termination Letter). Dean Charney's letter provided as follows:

> The Committee's findings that you committed research misconduct is alone grounds for termination. Yet, this decision is further supported by the Committee's findings that you failed to follow the standards of good laboratory practices, acted in a retaliatory fashion towards a junior member of your laboratory, failed to conduct yourself in a forthright manner with the Committee and failed to adhere to the authorship standards for scientific publication. These actions constitute both a violation of your professional and ethical obligations and MSSM's rules and regulations as well as a profound neglect of your professional duties as a faculty member of MSSM.

(Termination Letter)

### 8.     The Faculty Disciplinary Tribunal Affirmed Dean Charney's Decision to Terminate Chao

Under the MSSM Faculty Handbook, when disciplinary action is recommended by the Dean against a faculty member, the faculty member has a right to a hearing before the Faculty Disciplinary Tribunal. See MSSM Faculty Handbook Chapter IV – Faculty Disciplinary Tribunal. Chao elected to appeal his termination to the Disciplinary Tribunal. (Compl. ¶ 65). The Disciplinary Tribunal conducted a hearing over three sessions, examined all charges and allegations, heard testimony, allowed Chao to question witnesses, and inspected records and reports. (Compl. ¶ 65; Disciplinary Tribunal Decision). Defendants Mlodzik, Miller, Snoeck and Charney testified before the Faculty Disciplinary Tribunal. (Compl. ¶¶ 66-69.)

Consistent with the Faculty Handbook, after the hearing, the Disciplinary Tribunal issued its extensive Disciplinary Tribunal Decision sustaining the decision to terminate Chao. (Compl. ¶ 70 and Disciplinary Tribunal Decision.)

9.    **The Trustee Appeals Board Affirmed the**
      **Decision of the Faculty Disciplinary Tribunal**

Under Chapter IV of the MSSM Faculty Handbook, a faculty member may appeal the findings of the Disciplinary Tribunal or the decision of the Dean to the Board of Trustees.   (Faculty Handbook Chapter IV.)   Chao appealed his termination to the Trustee Appeals Board, and on or about March 16, 2010, the Trustee Appeals Board affirmed the decision of the Disciplinary Tribunal and the action of Dean Charney.   (Compl. ¶ 71 and Trustees Decision.)

## ARGUMENT

A.    **The Legal Standard for This Motion**

In deciding a motion to dismiss, the court "'must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.'"   Roth, 489 F.3d at 510.   To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), however, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).   A plaintiff's obligation to plead facts "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."   Id. at 545.   "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'"   Achtman v. Kirby, McInenery & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

B.    **Chao Fails To State A Claim For**
      **Defamation (Fourth Cause of Action)**

Under New York law the elements of a defamation claim are "(1) a false statement about the [complainant]; (2) published to a third party without authorization or privilege; (3) through fault amount to at least negligence on [the] part of the publisher; (4) that

either constitutes defamation per se or caused 'special damages'." Fuji Photo Film U.S.A., Inc.
v. McNulty, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (quoting Gargiulo v. Forster & Garbus,
651 F. Supp. 2d 188, 192 (S.D.N.Y 2009)).

      Chao alleges that the following statements are defamatory.

1. Statements made by Cohn in the 2007 Cohn Letter, which was sent by Cohn to RIO Miller. (Compl. ¶¶ 30-31, 35-38, 77, 91, 95, 103, 120.)

2. Statements made by Cohn while testifying before the Investigation Committee on April 28, August 11, and September 23, 2008. (Compl. ¶¶ 41-42, 77, 91, 95, 120)

3. Statements made by faculty member Ossowski while testifying before the Investigation Committee on May 12, 2008. (Compl. ¶ 62), which Chao further alleges Mt. Sinai and/or MSSM republished to the Disciplinary Tribunal and to the MSSM Board of Trustees. (Compl. ¶ 105)

4. Statements made by the Investigation Committee in its Final Report, which Chao alleges were published to Dean Charney, the Disciplinary Tribunal, and ORI. (Compl. ¶¶ 55-57, 62, 78, 104)

5. Statements made by defendants Mlodzik, Snoeck and Dean Charney, while testifying before the Disciplinary Tribunal (Compl. ¶¶ 66-69, 80-82, 88, 97-100), which Chao further alleges Mount Sinai/MSSM republished to the MSSM Board of Trustees. (Compl. ¶ 106-107)

6. Statements made by Dean Charney to the MSSM Board of Trustees. (Compl. ¶ 108.)

7. Statement made by the Mount Sinai Entities or MSSM to MSSM faculty members and/or employees "that Chao had been 'fired for data fraud'" (Compl. ¶¶ 72, 109)

      None of these allegations of defamation can withstand a motion to dismiss
pursuant to Rule 12 (b)(6), even assuming that they all are defamatory.

**1.**    **Chao's Defamation Claims against Defendants Cohn
and Ossowski Are Barred by the Statute of Limitations**

      Under New York law, an action for defamation must be brought within one year
of the publication of the alleged defamatory statement to a third party. See N.Y. C.P.L.R.

§ 215(3) ("The following actions shall be commenced within one year: . . . an action to recover damages for . . . libel, slander, false words causing special damages. . . ."); Hanly v. Powell Goldstein, L.L.P., 250 Fed. App's 435, 439 (2d Cir. 2008). Chao's defamation claims against Cohn are based solely on statements Cohn made in the 2007 Cohn Letter written to RIO Miller on October 3, 2007 (Compl. ¶¶ 30, 35, 37-38) and on statements Cohn made while testifying before the Investigation Committee on April 28, August 11, and September 23, 2008. (Compl. ¶¶ 41-42) Chao's defamation claim against defendant Ossowski is based on statements she made while testifying before the Investigation Committee on May 12, 2008. (Compl. ¶ 62; Report at 4). Chao commenced this action on April 2, 2010. (Compl. at 1.) Thus, Chao's claims for any allegedly defamatory statements made prior to April 2, 2009, including the allegedly defamatory statements by Cohn and Ossowski, are time-barred. See, e.g., Anderson v. Bronx Lebanon Hosp. Ctr. No. 03 Civ. 6450, 2005 WL 121746, at *13 (S.D.N.Y. Jan. 21, 2005). The fact that the Investigation Committee may have republished the alleged defamatory statements made by Cohn and Ossowski in its Final Report does not extend the statute of limitations under New York's single publication rule. See Karaduman v. Newsday, Inc., 51 N.Y. 2d 531, 540-41 (1980); Hoffman v. Landers, 146 A.D. 2d 744, 747 (2d Dep't 1989).[1]

### 2. Chao's Defamation Claims against Cohn, Ossowski, the Members of the Investigation Committee and MSSM Are Barred by the Absolute Privilege for Statements Made in Quasi-Judicial Proceedings

The publication by MSSM of the Final Report, the testimony before the Investigation Committee, and the 2007 Cohn Letter are absolutely privileged under New York law. Statements made during the course of judicial and quasi-judicial proceedings are protected

---

[1] The Final Report itself is privileged, as discussed below.

by an absolute privilege as long as the statements are material and pertinent to the subject matter of the proceedings. See Rosenberg v. Metlife, Inc., 8 N.Y.3d 359, 365 (2007). The rationale is that the fear of a defamation lawsuit should not be permitted to adversely impact the discharge of a public function. Id. Executive officials, and others performing governmental or quasi-governmental functions, must be free to exercise their duties without fear of being sued for defamation. See Barr v. Matteo, 360 U.S. 564, 569 (1959). Statements made in administrative agency proceedings are considered "quasi-judicial" and are protected by the absolute privilege. See, e.g., Viruet v. Citizen Advice Bureau, No. 01 Civ. 4594, 2002 WL 1880731, at *23 (S.D.N.Y. Aug. 15, 2002) (statements made by plaintiff's employer to New York State Department of labor were absolutely privileged), (quoting Hinds v. Magna Fabrics, Inc., No. 96 Civ. 1383, 1997 WL 309379, at *5 (S.D.N.Y. June 9, 1997) ("'It is well settled in New York . . . that statements made in quasi-judicial proceedings, including proceedings by agencies such as the EEOC, are protected by an absolute privilege.'")

The 2007 Cohn Letter, the testimony of Cohn and Ossowski before the Investigation Committee, and the publication of the Final Report to Dean Charney and ORI were all statements made in the preliminary and investigative stages of an ORI proceeding. Accordingly, these statements are protected by an absolute privilege. Under New York law, the absolute privilege has been extended "to preliminary or investigative stages" of an administrative proceeding, "particularly where compelling public interests are at stake." Rosenberg, 8 N.Y. at 3d 364 (citations omitted). In Rosenberg v MetLife, the New York Court of Appeals applied the absolute privilege to allegedly defamatory statements made by an employer regarding the termination of its former employee in a Form U-5 that the employer was required to file with the

NASD.[2] Id. at 362.  Some of the information provided on the Form U-5, including the reasons for the termination, was accessible by members of the investing public through the NASD's online registration and licensing database.  After the former employee was terminated, the employer provided the reasons for the termination in the U-F filed with the NASD, and the former employee then brought suit against the employer for defamation.

The court found that the Form U-5 played a significant role in the NASD's self-regulatory process.  Id. at 367.  Securities firms are compelled to file the Form U-5, and are subject to penalties if they fail to comply.  Id.  In addition, the Form U-5 is often the first indication received by the NASD regarding possible misconduct by members of the securities industry.  "As such," the Court of Appeals ruled, "the compulsory Form U-5 can be viewed as a preliminary or first step in the NASD's quasi-judicial process."  Id. at 367.  The Court of Appeals also found that there was a significant public interest implicated by the Form U-5, which is designed to alert the NASD to potential misconduct and, in turn, enable the NASD to investigate, sanction and deter misconduct by its registered representatives.  Id. at 367-68.  The court found that "[a]ccurate and forthright responses on the Form U-5 are critical to achieving these objectives."  Id. at 368.  The court concluded that the "Form U-5's compulsory nature and its role in the NASD's quasi-judicial process, together with the protection of public interests, lead us to conclude that statements made by an employer on the form should be subject to an absolute privilege."  Id.

The parallels between the facts in Rosenberg and those pled in the are striking. Just as the NASD has been delegated authority to enforce the Securities Exchange Act of 1934,

---

[2] The NASD is now known as the Financial Industry Regulatory Authority ("FINRA"), a non-governmental regulator for all securities firms doing business in the United States.  The fact that the Court of Appeals held the privilege to be absolute in a case not involving direct governmental regulation makes the privilege all the more applicable here, where the ORI is a part of the executive branch of the federal government.

id. at 366, the ORI has been delegated authority authority to enforce the NIH Revitalization Act.

Just as the NASD had promulgated rules designed to protect the investing public, id. at 368, the

ORI has promulgated regulations designed to "[p]rotect the health and safety of the public,

promote the integrity of PHS supported research and the research process, and conserve public

funds." 42 C.F.R. § 93.101(e). Just as the NASD's central responsibility is to investigate

suspected violations of securities laws and regulations by exchange members, id., ORI's central

responsibility is to investigate and make findings concerning the use of public funds to

perpetuate research fraud.

Like the NASD, ORI has the power to "inspect and copy any books, records or

accounts related to the investigation and may require individuals to testify under oath or provide

information in writing." Rosenberg, 8 N.Y.3d at 367; 42 C.F.R § 93.403(d). Like the NASD,

ORI is authorized to initiate disciplinary proceedings against individuals that conduct scientific

misconduct and to impose sanctions on such individuals. 42. C.F.R. § 93.407. Like the NASD,

ORI disciplinary determinations are subject to judicial review by an administrative law judge.

42 C.F.R. § 93.500(b). There is no doubt that proceedings governed by the ORI regulations are

quasi-judicial administrative proceedings protected by the absolute privilege against defamation

claims.

A research institution's obligation to investigate alleged research misconduct, as

set forth in the ORI Regulations, is even more prescriptive than the obligations of a securities

firm to investigate alleged securities broker malfeasance required by NASD/FINRA rules.

Under the ORI Regulations, the ORI has delegated to MSSM "primary responsibility" for

responding to and investigating complaints of research misconduct, the preliminary step in its

quasi-judicial process. This responsibility is an integral and indispensable part of the regulatory

scheme.  Because MSSM "stands in the shoes" of ORI in this preliminary stage, individuals who cooperate with and participate in the MSSM investigation should be entitled to the same absolute immunity that ORI would enjoy in conducting its own response and investigation.  See 42 U.S.C. § 93.400 ("ORI may respond directly to any allegation of research misconduct at any time before, during, or after an institution's response to the matter.")

Moreover, the rationale behind the absolute privilege is just as applicable in the initial stages of the ORI's proceeding as in the later stages.  A research institution's faculty should not be subject to the chilling effect of a defamation lawsuit as a result of fulfilling their legal duty of reporting suspected violations, testifying before investigation committees, interviewing witnesses, and preparing reports.  Such suits will invariably cause faculty at research institutions to shun these responsibilities for fear of being subject to personal liability.  Moreover, researchers who do choose to participate in the investigatory stage of ORI proceedings may be deterred from conveying their truthful convictions for fear of later being subject to a defamation lawsuit, possibly when they are no longer employed by the institution and have to take on their own legal defense.  Such reticent participation, conducted in an atmosphere of fear of recrimination, is exactly the opposite of what the ORI Regulatory Scheme is meant to accomplish: the prevention of research misconduct by requiring research institutions to report allegations of research misconduct and to quickly, candidly, and vigorously address such allegations when they arise.

In reaching its decision in Rosenberg, the New York Court of Appeals relied on another decision, Wiener v. Weintraub, 22 N.Y.2d 330, 331 (1968), which also supports a finding of absolute immunity for the 2007 Cohn Letter, the subsequent Investigation Committee activity, and the preparation of the Final Report. In Wiener, the Court of Appeals found that an

individual who submitted a complaint about an attorney to the Grievance Committee of the New York State Bar Association had an absolute privilege to do so. The court found that in investigating an initial complaint, the Grievance Committee, although a private actor, acted as a quasi-judicial body and as the arm of the Appellate Division of the Supreme Court. Id. at 332. It was in the public interest to encourage "those who have knowledge of dishonest or unethical conduct on the part of lawyers to impart that knowledge to a Grievance Committee or some other designated body for investigation." Id. The court reasoned that complainants with legitimate charges would be deterred from making complaints if doing so would subject them to a libel action by the accused attorney. Id. Moreover, an attorney against whom an unwarranted complaint had been lodged would not suffer injury to his reputation among the members of the Grievance Committee, since it was their very function to determine whether or not these charges are supportable. Id. Finally, any other risk of prejudice was eliminated by the provisions of N.Y. Judiciary Law (§ 90, subd. 10) which requires that "'all papers . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney . . . shall . . . be deemed private and confidential.'" Weiner, 22 N.Y.2d at 332.

Like the grievance committee, MSSM, through RIO Miller, Dean Charney, the Panel and the Investigation Committee, acted as the "arm" of ORI in receiving Cohn's complaint. As in Weiner, there is a compelling public policy on these facts to encourage those who have knowledge of potential research misconduct involving federal funds to impart that knowledge to a "designated body for investigation" - namely the RIO, the Dean, the Panel and the Investigation Committee. As in Weiner, there is no danger that statements made to the Panel, Investigative Committee, and ORI would injure Chao's reputation, because the very function of those bodies was to determine whether the allegations against Chao were supportable. Finally,

just as the Judiciary Law cloaked the grievance procedures in <u>Weiner</u> with confidentiality, thus guarding against injury to reputation, so do the ORI Regulations provide strict confidentiality to the entire complaint, inquiry, and investigative process.  42 C.F.R. § 93.108(a); 93.300(d), (e).

   The strong and beneficial public policy in New York protecting persons who disclose possible wrongdoing by attorneys and securities brokers is also reflected in N.Y. Educ. Law § 6527.3.  That law provides that an individual who serves on a committee of a hospital, among other things, in order to conduct physician peer reviews concerning alleged malpractice, utilization reviews or professional competence, shall not be "liable in damages to any person for any action taken or recommendations" reasonably made within the scope of the function and without malice.  <u>Id</u>. This qualified privilege includes actions for defamation.  <u>Shapiro v. Central Gen'l Hosp., Inc.</u>, 251 A.D.2d 317 (2d Dep't 1998); <u>see also</u> <u>Buckley v. Litman,</u> 57 N.Y.2d 516 (1982) ("publication by a physician to appropriate personnel in the Education Department of an allegedly defamatory letter concerning that physician's former assistant is subject <u>at least</u> to a qualified privilege" (emphasis added), and "publication of a carbon copy of the letter to a fellow physician with whom the author had a previous and continuing relationship giving rise to a common interest . . . is likewise subject to a qualified privilege").  <u>Id</u>. at 516-17.

   The Final Report's compulsory nature and its role in the ORI quasi-judicial process, together with the strong public policy of preventing research fraud, compel the conclusion that the allegedly defamatory statements made by Dean Charney, RIO Miller, Cohn, Ossowski and the defendant members of the Investigative Committee are subject to an absolute privilege.

### 3.   Chao's Defamation Claims against All Defendants
###       Are Barred by the Qualified Common Interest Privilege

In addition to the statements made pursuant to the ORI investigation, Chao also brings suit based certain statements made or republished to the Disciplinary Tribunal and the Trustee's Appeal Board on his appeal of MSSM's termination decision are defamatory. This is ironic given that the Disciplinary Tribunal conducted a hearing <u>at Chao's request,</u> to give him the benefit of having his faculty peers, determine, on <u>de novo</u> review, whether MSSM had grounds for terminating him under the Faculty Handbook. After the Disciplinary Tribunal sustained Dean Charney's decision to terminate Chao, Chao further appealed the Disciplinary Tribunal's report to the Trustees Appeal Board, which affirmed the Disciplinary Tribunal's decision. (Compl. ¶ 71.)

It is well-settled under New York law that statements made in the employment context to those having a need to know concerning the qualifications and conduct of employees is subject to a qualified privilege. <u>See</u> <u>Culver v. Merrill Lynch & Co.,</u> No. 94 Civ. 8124, 1995 WL 4222203 at *5 (S.D.N.Y. July 17, 1995); <u>Dillon v. City of New York,</u> 261 A.D.2d 34, 40 (1st Dep't 1999). The rationale behind the privilege "'is that the flow of information between employers and employees should not be impeded by the fear of defamation suits.'" <u>Aquilone v. Republic Nat'l Bank of New York,</u> No. 98 Civ. 5451, 1998 WL 872425, at *3 (S.D.N.Y. Dec. 15 1998) (citation omitted). The common interest privilege also attaches when the speaker has a duty to make the communication, "'though the duty may be not a legal one, but only a moral or social duty of imperfect obligation.'" <u>Slue v. New York Univ. Med. Ctr.,</u> 409 F. Supp. 2d 349, 365 (S.D.N.Y. 2006).

The qualified common interest privilege applies with equal force to both statements made in the course of MSSM's ORI-mandated investigation and to statements made

to the Disciplinary Tribunal and Trustees Appeal Board, that is, the alleged publication by the Investigation Committee of the Final Report to the Disciplinary Tribunal (Compl. ¶ 104); the republication of statements made by defendant Ossowski to the Investigation Committee to the Disciplinary Tribunal and the Board of Trustees (Compl. ¶ 105); the statements and testimony of Dean Charney, Mlodzik and Snoeck at the Disciplinary Tribunal Hearing, which were allegedly republished to the Trustee's Appeal Board (Compl. ¶¶ 106-108).

Assuming that Chao's voluntary appeal to Disciplinary Tribunal and the Appeals Board does not constitute a waiver of any defamation claim, any statements published by MSSM officials and faculty members to the Disciplinary Tribunal or to the Appeals Board (together, the "MSSM Due Process Panels") are subject to the common interest privilege because the makers of such statements had a common interest in "promoting an environment that emphasizes open publication and discussion, high quality research, appropriate supervision, accurate and complete research records and appropriate attribution of credit and responsibility." (Faculty Handbook Chapter VI.) In addition, the administrators and faculty members who made or republished the alleged defamatory statements had a common interest with the Due Process Panels in providing Chao with a "peer review process." (Faculty Handbook Chapter IV.) Indeed, this is the very rationale for the immunity provided by N.Y. Educ. Law § 6527.

Because all the defendants had both a duty to make the statements at issue and a common interest with the individuals to whom the statements were published, Chao's defamation claim must be dismissed. See Leung v. New York Univ., No. 08 Civ. 5150 2010, WL 1372541, at *8 (S.D.N.Y. Mar. 29, 2010) (communications made by medical school employees as part of investigation of plaintiff's misconduct were subject to qualified privilege); Slue, 409 F. Supp. 2d 349 (statements made by department faculty chair and department

administrator in course of investigating allegations of sexual misconduct by non-tenured teaching assistant were subject to qualified privilege); <u>Donofrio-Ferrezza v. Nier</u>, No. 04 Civ. 11621, 2005 WL 2312477, at **13-14 (S.D.N.Y. Sept. 21, 2005) (statements made by faculty members at meeting concerning plaintiff's tenure review were privileged because "[a] faculty member who frankly assesses a candidate for tenure need not strip his or her comments of all but bland and innocuous language in order to avoid a lawsuit brought by a disappointed candidate").

Claims of defamation which are subject to the common interest privilege are subject to dismissal under Fed. R. Civ. P. 12(b)(6) if the complaint fails to pleads facts showing that the allegedly defamatory statements were made with either common law or constitutional malice. Common law malice means spite or ill will, and "will defeat the privilege only if it is "'the one and only cause for the publication.'" <u>Konikoff v. Prudential Ins. Co. of Am.</u>, 234 F.3d 92, 98 (2d Cir. 2000) (citations omitted). Chao has failed to plead any facts that give rise to an inference that any of the allegedly defamatory statements made by the individual defendants were made with spite or ill will. Instead, Chao alleges that the faculty members serving on the Investigation Committee acted with spite based on conclusions that the Investigation Committee reached in its report that "Chao promoted a laboratory culture of misconduct and authoritarianism by rewarding results consistent with his theories and berating his staff if the results were inconsistent with his expectations." (Compl. ¶¶ 57, 114.) Similarly, he alleges that a statement made by Dean Charney to the Disciplinary Tribunal that Chao "acted in an inappropriately authoritative manner in his laboratory" and "was happiest with the post doc when they [sic] did not question him or his judgment" evidences that Dean Charney acted with spite in making those statements. (Compl. ¶ 67.) However, the fact that the conclusions reached by the Investigation Committee, Dean Charney, and the other defendants were unflattering to Chao,

does not give rise by itself to an inference that any of them were motivated by spite or ill will in making these statements.

Likewise, contrary to Chao's allegations, the fact that the Investigation Committee did not interview any other members of Chao's lab besides Chao, Cohn and lab technician Meagan Kelly (whom Chao alleges testified in his <u>favor</u>), does not give rise to any inference that the conclusions reached by the Investigation Committee were motivated by malice or ill will. (Compl. ¶¶ 115; Report at 4; Addendum Report at 1-2)  The Investigation Committee, not Chao, is charged with the responsibility for deciding whom it will interview.  42 C.F.R. § 93.310(g).  Chao does not provide any reasons why the Investigation Committee should have interviewed any members of Chao's lab other than Chao, Cohn or Kelly, or any other reason to believe the Investigation Committee did not interview any available persons "having information regarding relevant aspects of the investigation."  42 C.F.R. § 93.310(g).  Moreover, the fact that the Investigation Committee did not interview each and every member of Chao's lab does not indicate that the conclusions the Investigation Committee reached, based on interviews with eight individuals[3] with relevant knowledge, were motivated by malice or spite.  Furthermore, the fact that the Investigation Committee allegedly did credit the testimony of one witness, Cohn, over another witness, Kelly, does not evidence any spite or ill will on the part of the Investigation Committee in reaching its conclusion.  (Compl. ¶ 112.)  Fact-finders are entitled to balance the credibility of one witness against another in making determinations, and this does not mean that the conclusions they reach are motivated by spite or ill will.  In sum, the Complaint fails to allege anything even close to common law malice.

---

[3] The eight individuals were Cohn, Kelly, Dr. Randolph, Dr. Ossowski, Dr. Walsh, Dr. Nathan and Dr. Atweh, in addition to Chao himself.  (Final Report at 4.)  The panel notes in the Addendum to the Final Report (at footnote 1) that Walsh, Kelly and Randolph were Chao's collaborators with the research at issue.

Chao has also only made the barest conclusory allegations regarding constitutional or "actual" malice.  Constitutional or actual malice means publication "with a high degree of awareness of the publication's probable falsity or while the defendant in fact entertains serious doubts as to the truth of the publication." Fuji PhotoFilm U.S.A., 669 F. Supp. 2d at 412. At best, Chao only pleads two alleged facts in support of his conclusory allegation that any of the defendants acted with constitutional malice.  First, he pleads that the committee did not credit the testimony of Chao's lab technician, Kelly, whose testimony allegedly contradicted Cohn's allegations of data fraud.  (Compl. ¶ 115.)  However, the fact that Cohn testified that Chao did commit data fraud, and the other interviewees supported that claim, is enough to rebut any allegation that the Investigation Committee knew that that its conclusions were not true.

Second, with respect to his claim against MSSM, Chao asserts that the fact that ORI decided to administratively close Chao's case for reasons unstated, without pursuing findings of research misconduct, implied that MSSM entertained serious doubts as to the truth of the statement it purportedly made that that Chao was terminated for data fraud.  (Compl. ¶ 112). However, the fact that ORI decided to administratively close its case, did not exonerate Chao; rather, ORI expressly instructed MSSM that its determination did not diminish MSSM's right to examine the allegations pursuant to its own standards of conduct (ORI Letter).

Because Chao's allegations of malice "rest solely on surmise and conjecture," his defamation claims must be dismissed under Fed. R. Civ. P. 12(b)(6).  Dillon, 261 A.D.2d at 40; Anderson, 2005 WL 121746 at *13 (physician's defamation claim against hospital and its employees dismissed under Fed. R. Civ. P. 12(b)(6), where allegations of malice were too conclusory and unsupported by any evidentiary facts to survive a motion to dismiss based on the common interest privilege); Serratore v. Am. Port Servs., Inc., 293 A.D.2d 465, 464 (2d Dep't

2002) (former employee's defamation claim dismissed for failure to state a cause of action based on "shared interest" and "duty to speak" privilege because mere conclusory assertions of malice would not defeat qualified privilege asserted by former employer); Red Cap Valet, Ltd. v. Hotel Nikko (USA), Inc., 273 A.D.2d 289, 290 (2d Dep't 2000) (former employee's defamation claim dismissed for failure to state a cause of action based on "common interest" privilege arising from statement made to co-worker because "plaintiff failed to allege any facts from which malice could be inferred and its conclusory allegations of malice were insufficient to overcome the privilege.")(citations omitted).

   **4.     Chao's Defamation Claim against "Mount
            Sinai and/or MSSM" Is Impermissibly Vague And
            Based on a Statement That Is Not False**

In order to state a cognizable defamation claim, plaintiff must provide a reasonably detailed description of the defamatory statement sufficient to "'afford defendant sufficient notice of the communications complained of to enable him to defend himself.'" Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (citations omitted).  Chao's defamation claim against "Mount Sinai and/or MSSM" is based on the allegation that on March 19, 2010, Chau spoke with an unidentified faculty member and learned that his colleagues had been informed that Chau had been fired "for data fraud." (Compl. ¶ 72).  The Complaint further alleges that on March 22, 2010, when Chao went to MSSM to collect his personal belongings, the same unidentified MSSM faculty member repeated the allegation. (Compl. ¶ 73). This allegation does not identify the time, place, and manner of the allegedly defamatory statement made by MSSM to Chao's colleagues; the individual(s) who made the statement on behalf of Mount Sinai or MSSM (which of the three entities is not specified); or the exact individuals to whom the statement was allegedly made.  A pleading asserting a cause of action for defamation "is only

sufficient if it adequately identifies 'the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.'" Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000) (citations omitted). Chao's vague allegation does not provide sufficient notice for MSSM to enable it to defend themselves, and must therefore be dismissed. See Leung, 2010 WL 1372541, at* 8 (defamation claim must clearly identify the alleged statements in question to survive a motion to dismiss).[4] Moreover, in order to be defamatory, a statement must be false. Since Chau was indeed fired for data fraud (see Termination Letter and Final Report), Chao has failed to state a claim for defamation.

Chao further alleges that "upon information and belief," on several occasions in March and April 2010, during meetings with several members of MSSM's Hematology/Oncology departments, Sally Strauss, MSSM's Senior Associate General Counsel, stated that Dr. Chao had committed extensive fraud and that his research had multiple problems. Once again Chao fails to identify the alleged recipients of this statement or the circumstances in which it was made; the latter point is significant in view of Ms. Strauss's legal position and a possible common interest privilege. In any event, Chao has not named Ms. Strauss as a defendant and MSSM cannot be held liable for her alleged statements on a theory of respondent superior.

## C.     Chao Fails to State Any Claim for Injurious Falsehood/Trade Libel (Fifth Cause of Action)

Chao's purported claim for "injurious falsehood/trade libel" is based on the same statements that form the basis of his defamation claim, although he adds the conclusory and wholly unsupported allegation that such statements "were calculated to interfere with his

---

[4] In paragraph 75 of the Complaint, Chao also references "false statements" made by Cohn to "Defendant Ossowski, Gwendalyn J. Randolph and to other members of the MMS Faculty" but he does not provide any particulars of these statements such as the content or time of these alleged statements. Accordingly, paragraph 75 should be stricken as vague and imprecise.

employment with Mount Sinai/MSSM and to prevent others from employing him." (Compl. ¶ 120.)  Additionally, his claimed damages for "injurious falsehood/trade libel" are exactly the same as those alleged in his defamation claim.  New York law courts will deem a state tort claim to be a defamation claim when the claim "'seek[s] damages only for injury to reputation" or where "the entire injury complained of by plaintiff flows from the effect on his reputation.'"  See Jain v. Securities Indus. and Fin. Markets Assoc., No. 08 Civ. 6463, 2009 WL 3166684, at *8 (S.D.N.Y. Sept. 28, 2009) (citations omitted).  The gravamen of the injury alleged by Chao's injurious falsehood claim (as well as his other tort claims) is that the defamation caused direct harm to his reputation or indirect harm flowing from the alleged effect on his reputation (such as his termination from MSSM, his resulting loss of income and benefits, and his inability to find additional work.)  See id. (dismissing injurious falsehood claim where plaintiff claimed that defamatory letter sent to her colleagues and superiors was the proximate cause of her termination).  Since Chao's injurious falsehood claim is duplicative of his defamation claim, it should be dismissed on the same grounds on the defamation claim.  See O'Brien v. Alexander, 898 F. Supp. 162, 172 (S.D.N.Y. 1995) (dismissing injurious falsehood claim as being duplicative of defamation claim where "plaintiff's damages for the injurious falsehood claim are exactly the same as those alleged for the defamation claim").  See also Riddell Sports Inc. v. Brooks, 872 F. Supp. 73, 76 (S.D.N.Y. 1995) (court held "one year limitations period applicable despite the labels which counterplaintiffs apply to their [injurious falsehood] claims" since the essence of the claimed injury was one to reputation) (citation omitted); Santaganda v. Lifedata Med. Servs., Inc., No. 92 Civ. 6110, 1993 WL 378309 at *5 (S.D.N.Y. Sept. 22, 1993).

In addition, Chao's claim for injurious falsehood/trade libel should be dismissed because he has failed to itemize any special damages, besides "his total compensation package of

over $180,000", he makes no attempt to itemize the alleged loss of laboratory and office space,

access to shared administrative support, "seed money" to support his research personnel,

equipment, and supplies. (Compl. ¶ 121). This is unavailing since the requirement of pleading

and proving special damages is applied strictly in New York to claims for injurious falsehood

and trade libel. See Kasada Inc. v. Access Capital, Inc., No. 01 Civ. 8893, 2004 WL 2903776, at

*16 (S.D.N.Y. Dec. 14, 2004) (dismissing claim for injurious falsehood/trade libel where

plaintiff only alleged damages "'in an amount to be determined at trial but not less than

$40,000,000'"); Drug Res. Corp. v. Curtis Publ'g Co., 7 N.Y.2d 435, 440-41 (1960) (finding

that special damages were not adequately alleged where the damage claim was a round figure

[$5,000,000] with no attempt at itemization); Rall v. Hellman, 284 A.D.2d 113, 114 (1st Dep't

2001) (finding that complaint was deficient because it failed to identify special damages with

sufficient particularity).

> **D.     Chao Fails to State Claims for Tortious**
> **Interference With Contract (First Cause of Action)**

> **1.     Chao's Tortious Interference Claim**
> **Must Fail on the Same Grounds as His Defamation Claim**

"Under New York law, the elements of a tortuous interference claim are (a) that a

valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party

intentionally and improperly procured the breach of the contract; and (d) that the breach resulted

in damage to plaintiff." Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001) (citation omitted).

Since Chao's tortuous interference claim is duplicative of his defamation claim, it should be

dismissed on the same ground of privilege. Moreover, Chao's claims against defendants Cohn

and Ossowski should also be dismissed because Chao cannot bypass the one-year statute of

limitation simply by repleading his defamation claim under a different name: "[t]he New York

Courts have consistently ruled that a claim which is ostensibly based upon the intentional torts of

interference with advantageous or contractual relations, but which alleges injury to reputation, is a disguised defamation claim and subject to a one-year limitations period under CPLR 215(3)." Pedraglio v. Citibank, Inc., No. 97 Civ. 2179, 1997 WL 778750, at **3-4 (S.D.N.Y. Dec. 18, 1997) (quoting Lehtinen v. Bill Comm'ns, Inc., No. 88 Civ. 8257, 1989 WL 38130, at *6 (S.D.N.Y. Apr. 12, 1989)).

### 2.     No Wrongful Means Was Present

Indeed, even if Chao's claims could be sustained as a valid stand-alone claim, it would still fail, as the qualified privilege for employment relationships that protects the statements made by individual defendants also precludes a characterization of their statements as "wrongful means" for purposes of tortuous interference.  The individual defendants did not use "wrongful means," as they acted pursuant to their legal duty under the NIH Revitalization Act and the MSSM Faculty Handbook to investigate and respond to allegations of research fraud. See Donofrio-Ferrezz, 2005 WL 2312477 at *17 (privileged statements made by faculty members as part of tenure review process precluded characterization of such statements as "'wrongful means'" for purposes of tortuous interference") (citing Markovic v. New York City Sch. Constr. Auth., No. 99 Civ. 10339, 2002 WL 22043 at *11 (S.D.N.Y. Jan. 8, 2002)).

### 3.     The Medical School Employees Cannot
###         Interfere with Their Employer's Own Contract

Chao alleges that he and all of the individual defendants were employees of MSSM at all relevant times.  (Compl. ¶¶ 9, 12-13, 18-20.)  Chao has further alleged that the Investigation Committee was acting as an agent for MSSM in making the alleged defamatory statements. (Compl. ¶ 118.)  Therefore, based on Chao's own allegations, all of the individual defendants were employees of MSSM acting within their scope of their employment for MSSM

in reporting and investigating the allegations of Chao's research fraud.   A claim for tortuous interference with contract may only be asserted, however, against the unjustifiable interference by a third party, and not a party to the contract.   Moreno v. Marbil Productions, Inc., 296 F.2d 543, 544-45 (2d Cir. 1961).   For this common-sense reason, "employees of a corporation are not personally liable for inducing the corporation to breach a contract with a third party if they act on behalf of the corporation and within the scope of their duties."   Id.

Because the Complaint makes clear that the individual defendants were employees of MSSM, acting on behalf of MSSM in investigating and disciplining Chao, these defendants may not be liable for interfering with Chao's contract with MSSM.   See Spang v. Katonah v. Lewisboro Union Free Sch. Dist., 626 F. Supp. 2d 389, 400-01 (S.D.N.Y. 2009) (school superintendent who reviewed plaintiff's work and recommended his termination to board of education could not be considered third-party interloper to plaintiff's employment agreement); Slue, 409 F. Supp. 2d 349 (medical school faculty members who suspended teaching assistant after investigating his improper activities could not be held liable for tortiously interfering with assistant's contract); Donofrio-Ferrezza, 2005 WL 2312477, at *17 (faculty members at educational institute could not be held liable for breaching assistant professor's employment contract based on statements made to fellow faculty members during plaintiff's tenure review process).

**E.   Chao Fails to State a Claim for Tortious Interference**
**With Prospective Business Advantage (Second Cause of Action)**

As with a tortuous interference with contract claim, a "[p]laintiff is not permitted to dress up a defamation claim as a claim for intentional interference with prospective economic advantage."   Krepps v. Reiner, 588 F. Supp. 2d 471, 485 (S.D.N.Y. 2008) (citation omitted). Since the claimed damages to Chao's tortuous interference claim are measured solely by harm

flowing from injury to his reputation, this cause of action sounds in defamation and should be dismissed as being duplicative of Chao's defamation claim.  See Pasquilini v. Mortgage IT, Inc., 498 F. Supp. 2d 659, 669-70 (S.D.N.Y. 2007).  In addition,  Chao's claims against Cohn and Ossowski are barred by the one-year statue of limitations, which is applicable to Chao's thinly-disguised claim for defamation.  Id. at 670.

To plead a claim for tortuous interference with prospective business relations, a plaintiff must allege that defendants interfered with business or economic relations between the plaintiff and a third party, either with the sole purpose of harming the plaintiff or by "dishonest, unfair, or improper means."  Id.  Chao does not allege that the individual defendants interfered with his employment with MSSM with the "sole purpose" of harming him, as all of the action taken by the defendants were required by ORI Regulations and the Faculty Handbook.  Nor does he allege that the defendants interfered with any prospective business relations as the basis of his claim is the existing "business relationship," meaning the contractual relationship, between Chao and MSSM. (Compl. ¶ 87).

In addition, to be held liable, a defendant "must interfere with the business relationship 'directly' that is, the defendant must direct some activities towards the third party and convince the third party not to enter a business relationship with the plaintiff."  Id.  The decision to terminate Chao was independently made by Dean Charney and then upheld by both the Disciplinary Tribunal and the Board of Trustees.  The statements made by Cohn, Ossowski and the Investigation Committee defendants were not made in order to convince MSSM to terminate Cohn's employment, but instead were made pursuant to the ORI Regulations and the Investigation Committee's obligations under MSSM's policies.

**F.**     **Chao Fails to State a Claim for**
         ***Prima Facie* Tort (Third Cause of Action)**

Chao's *prima facie* tort claim against Cohn should also be dismissed. This claim is based solely on her alleged dissemination of false statements in the 2007 Cohn Letter, and statements to the Investigation Committee in 2007 and 2008. (Compl. ¶ 88.) It is well-settled that where "[t]he factual allegations underlying [the prima facie tort] cause of action relate to the dissemination of allegedly defamatory materials, that cause of action '"must fail."'" McKenzie v. Dow Jones & Co., 355 Fed. App. 533, 536 (2d Cir. 2009) (quoting Butler v. Delaware Otsego Corp., 203 A.D.2d 783 (3d Dep't 1994)). Chao's Complaint, which repeatedly avails itself of the terminology of defamation, cannot properly be considered to raise a claim of *prima facie* tort. McKenzie, 355 Fed. App. at 536. Moreover, as discussed above, Chao's defamation claim is time barred by the statute of limitations and by absolute and qualified privileges. "It is well-settled in New York that a plaintiff cannot save an untimely defamation claim by fashioning the claim under some other rubric, thereby to avail himself of a longer limitations period." Id. at 535) (citing Morrison v. Nat'l Broad. Co., 19 N.Y.2d 453, 459 (2d Cir. 1967). In any event, the statute of limitations for *prima facie* tort is one year. See Thomas v. Bergdorf Goodman, Inc., No. 03-3066(SAS), at *12 (Dec. 22, 2004).

**G.**     **Chao's Claims against the Mount Sinai Entities Should Be Dismissed**

All of plaintiff's claims against the Mount Sinai Entities should be dismissed because plaintiff was an employee only of MSSM, and not of either of the Mount Sinai Entities. (Compl. ¶¶ 16-20.) Similarly, all of the individual defendants are employees of MSSM, not the Mount Sinai Entities. (Compl. ¶¶ 9, 11-13.) Plaintiff does not allege any relationship between the Mount Sinai Entities and MSSM in the Complaint, nor has he pleaded any facts to suggest that there is an identity of interest between MSSM and the Mount Sinai Entities. Because Chao

has not pleaded any facts showing that the Mount Sinai Entities were his employer, or any facts by which these entities can be deemed to be joint employers at the time the alleged unlawful acts occurred, his claims against them should be dismissed.

The recent decision of this Court in <u>Leung</u> is exactly on point.  Plaintiffs were employed by defendant New York University Medical Center, an academic institution affiliated with New York University ("N.Y.U."). As here, plaintiffs sued both entities for racial discrimination under Title VII, the New York Executive Law and the New York City Administrative Code.  This Court dismissed "[a]ll claims against N.Y.U. . . . because plaintiffs are employees of the Medical Center and not N.Y.U." 2010 WL 1372541, at *9.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the first through fifth causes of action in the Complaint be dismissed, and the Mount Sinai Entities respectfully request that the entire Complaint be dismissed as against them.

New York, New York
June 30, 2010

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: _____
Kenneth J. Kelly
Beth Essig
James Treece
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500
kkelly@ebglaw.com
*Attorneys for Defendants*